I. Introduction
Robert Lee (case no. 1010324), Letha Witherspoon (case no. 1010325), LaSonya Dudley (case no. 1010326), Antoine Parnell (case no. 1010327), and Bernice King (case no. 1010504) are the plaintiffs in these *Page 611 
cases.[1] (For ease of reference, each case will hereinafter be referred to by the respective plaintiff's name, e.g., "the Lee case," "the Witherspoon case," etc.) In each case, the respective plaintiff purchased a manufactured home or a mobile home from a seller, and the transaction was financed by either GreenPoint Credit, LLC[2]
(hereinafter referred to as "GreenPoint") (the Witherspoon case, the Dudley case, the Parnell case, and the King case), or by BankAmerica Housing Services, a division of Bank of America, FSB (hereinafter referred to as "BankAmerica") (the Lee case) ("GreenPoint" and "BankAmerica" are hereinafter jointly sometimes referred to as "the defendants"). In each transaction, the plaintiff became dissatisfied with the home he or she had purchased and sued the seller, the manufacturer, and the financing company, either GreenPoint or BankAmerica. In his or her complaint, each plaintiff asserted numerous claims, including fraud and breach of fiduciary duty. In each of the underlying transactions, the installment sales contract signed by the plaintiff contained an arbitration agreement. In each of these cases, the defendant financing company, either GreenPoint or BankAmerica, moved to compel arbitration. With the exception of Witherspoon, each plaintiff eventually consented to arbitrate their claims.
In each case, the trial court entered an order compelling arbitration. The defendants now appeal, complaining about certain aspects of those orders, arguing that in each case the order compelling arbitration was improper because it impermissibly deviated from the terms of the applicable arbitration provision by changing the contractually prescribed method of selecting the arbitrator and conducting the arbitration.
 II. Procedural History
As a foundation for our legal analysis, we set forth the pertinent procedural sequence of events in each case. In the Lee case, the order to compel arbitration was entered on October 18, 2001. The order stated, in pertinent part:
 "THIS CAUSE, having come before the Court upon Defendants' various Motions to Compel Binding Arbitration, and the Plaintiff having consented to arbitration, it is
 "ORDERED, ADJUDGED, and DECREED that said motions are due to be granted, as follows, viz:
 "1. All claims of the Plaintiff against the Defendants shall be submitted to arbitration;
 "2. The Attorneys for the parties are ORDERED to provide to the Court within fourteen (14) days of the date of this Order, the name of the arbitrator selected by the parties. Failure to do so shall result in the Court selecting the arbitrator;
 "3. All parties shall participate in immediate binding arbitration, and said arbitration shall be concluded within 90 days;
 "4. The fees and expenses of the Arbitration shall be paid equally by the Defendants and in the manner required by the Arbitrator;
 "5. The parties are hereby ORDERED to notify the Court within ten *Page 612 
 (10) days from the conclusion of arbitration as to the outcome of the same;
 "6. All other matters concerning these proceedings are stayed, and this case shall be transferred to the Administrative Docket pending conclusion of the arbitration process."
On November 2, 2001, BankAmerica filed a notice of appeal.
In the Witherspoon case, the initial order to compel arbitration was entered on July 17, 2001. That order stated:
 "THIS CAUSE, having come before the Court upon Defendants' various Motions to Compel Binding Arbitration, and the same having been considered by the Court, it is
 "ORDERED, ADJUDGED, and DECREED that said motions are due to be granted and all claims of the Plaintiff against the Defendants shall be submitted to arbitration. All parties shall participate in immediate binding arbitration, and said arbitration shall be concluded within 90 days.
 "The fees and expenses of the Arbitration shall be paid by the Defendants and in the manner required by the Arbitrator;
 "The parties are hereby ORDERED to notify the Court within ten (10) days from the conclusion of arbitration as to the outcome of the same;
 "All other matters concerning these proceedings are stayed, and this case shall be transferred to the Administrative Docket pending conclusion of the arbitration process."
GreenPoint filed a motion to alter, amend, or vacate the order, and Witherspoon filed a motion to extend time. In response, the trial court issued a second order compelling arbitration; that order is the one at issue in this appeal. The trial court's second order, entered on October 23, 2001, differed from the original order by extending the time for arbitration to be completed by another 90 days, and by adding the following clause:
 "The Attorneys for the parties are ORDERED to provide to the Court within fourteen (14) days of the date of this Order, the name of the arbitrator selected by the parties. Failure to do so shall result in the Court selecting the arbitrator."
On November 2, 2001, GreenPoint filed a notice of appeal from this second order.
In the Dudley case, the order compelling arbitration was entered on October 23, 2001, and provided, in pertinent part:
 "THIS CAUSE, having come before the Court upon Defendants' various Motions to Compel Binding Arbitration, and the Plaintiff having consented to arbitration, it is
 "ORDERED, ADJUDGED, and DECREED that said motions are due to be granted, as follows, viz:
 "1. All claims of the Plaintiff against Defendants shall be submitted to arbitration;
 "2. The Attorneys for the parties are ORDERED to provide to the Court within thirty (30) days of the date of this Order, the name of the arbitrator selected by the parties. Failure to do so shall result in the Court selecting the arbitrator;
 "3. All parties shall participate in immediate binding arbitration, and said arbitration shall be concluded within 120 days;
 "4. The fees and expenses of the Arbitration shall be paid equally by the Defendants and in the manner required by the Arbitrator;
 "5. The parties are hereby ORDERED to notify the Court within ten *Page 613 
 (10) days from the conclusion of arbitration as to the outcome of the same;
 "6. All other matters concerning these proceedings are stayed, and this case shall be transferred to the Administrative Docket pending conclusion of the arbitration process."
On November 2, 2001, GreenPoint filed a notice of appeal.
In the Parnell case, the order compelling the parties to arbitration was entered on September 7, 2001. That order stated in pertinent part:
 "THIS CAUSE, having come before the Court upon Defendants' various Motions to Compel Binding Arbitration, and the same having been considered by the Court, it is
 "ORDERED, ADJUDGED, and DECREED that said motions are due to be granted and all claims of the Plaintiff against the Defendants shall be submitted to arbitration. All parties shall participate in immediate binding arbitration, and said arbitration shall be concluded within 90 days.
 "The parties are hereby ORDERED to notify the Court within ten (10) days from the conclusion of arbitration as to the outcome of the same.
 "All other matters concerning these proceedings are stayed, and this case shall be transferred to the Administrative Docket pending conclusion of the arbitration process."
The trial court entered a second order on October 23, 2001, which stated that the parties had appeared before the trial court and had requested an extension of time within which to arbitrate. The second order stated in pertinent part:
 "[I]t is ORDERED, ADJUDGED, and DECREED that the parties are granted 120 days within which to arbitrate this matter.
 "It is FURTHER ORDERED, the Attorneys for the parties are ORDERED to provide to the Court within thirty (30) days of the date of this Order, the name of the arbitrator selected by the parties. Failure to do so shall result in the Court selecting the arbitrator."
On November 2, 2001, GreenPoint filed a notice of appeal from this order.
In the King case, the first order compelling arbitration was entered on October 12, 2001. This order stated in pertinent part:
 "THIS CAUSE, having come before the Court upon Defendants' various Motions to Compel Binding Arbitration, and the Plaintiff having consented to arbitration, it is
 "ORDERED, ADJUDGED, and DECREED that said motions are due to be granted, as follows, viz:
 "1. All claims of the Plaintiff against Defendants shall be submitted to arbitration;
 "2. The Attorneys for the parties are ORDERED to provide to the Court within fourteen (14) days of the date of this Order, the name of the arbitrator selected by the parties. Failure to do so shall result in the Court selecting the arbitrator;
 "3. All parties shall participate in immediate binding arbitration, and said arbitration shall be concluded within 90 days;
 "4. The fees and expenses of the Arbitration shall be paid equally by the Defendants and in the manner required by the Arbitrator;
 "5. The parties are hereby ORDERED to notify the Court within ten (10) days from the conclusion of arbitration as to the outcome of the same;
 "6. All other matters concerning these proceedings are stayed, and this case shall be transferred to the *Page 614 
 Administrative Docket pending conclusion of the arbitration process."
On November 6, 2001, GreenPoint filed its notice of appeal. On November 8, 2001, however, the trial court purported to enter a second order in this case; that order stated, in pertinent part:
 "That The Honorable Claud D. Neilson, Retired Circuit Judge, Demopolis, Alabama, be, and he is, hereby appointed as the Arbitrator to conduct an Arbitration Hearing in accordance with the laws and statutes of the State of Alabama.
 "The arbitration process is to be concluded on or before January 11, 2002.
". . . .
 "If the arbitration award as awarded by the arbitrator is not performed within ten (10) days after the parties have received notice of the award, the prevailing party shall file a copy with a motion to have it entered as a Judgment of this Court pursuant to the provisions of Sec. 6-6-12, Code of Alabama, 1975."
 III. Legal Analysis
We first turn to GreenPoint's appeal in the Parnell case. Parnell asserts that GreenPoint's appeal is untimely, and is due to be dismissed.
The record in the Parnell appeal shows that an order compelling arbitration was entered on September 7, 2001. Although the parties did not contest that order, the record indicates that the parties subsequently petitioned the trial court for an extension of time within which to arbitrate. In response, the trial court on October 23 entered the order compelling arbitration, which incorporated the September 7 order and added the points that are at issue in this case. Although Parnell argues that the September 7 order was the order from which the 42-day period for appeal pursuant to Rule 4(d), Ala.R.App.P., began to run, the briefs of the parties show that it is only the newly added features of the second order, regarding the selection of the arbitrator and imposing a deadline for the completion of the arbitration process, that are the subject of this appeal. Because GreenPoint appealed within 42 days of the October 23 order, the appeal is properly before us.
The record in each case shows that the respective plaintiffs signed a "Retail Installment Contract, Security Agreement, Waiver of Trial by Jury and Agreement to Arbitration or Reference or Trial by Judge Alone" (hereinafter referred to as the "installment contract") in the course of purchasing their respective manufactured or mobile homes. Each installment contract contained arbitration provisions that were identical in all pertinent respects, stating:
"Arbitration of disputes and waiver of jury trial
 "a. Dispute resolution. Any controversy or claim between or among you and me[3] or our assignees arising out of or relating to this contract or any agreements or instruments relating to or delivered in connection with this Contract, including any claim based on or arising from an alleged tort, shall, if requested by either you or me, be determined by arbitration, reference, or trial by a judge as provided below. A controversy involving only a single claimant, or claimants who are related or asserting claims arising from a single transaction, shall be determined by arbitration as described below. Any other controversy shall be determined by judicial reference of the controversy to a referee appointed by the court or, if the court where the *Page 615 
 controversy is venued lacks the power to appoint a referee, by trial by a judge without a jury, as described below. You and I agree and understand that we are giving up the right to trial by jury, and there shall be no jury whether the controversy or claim is decided by arbitration, by judicial reference, or by trial by a judge.
 "b. Arbitration. Since this contract touches and concerns interstate commerce, an arbitration under this Contract shall be conducted in accordance with the United States Arbitration Act (Title 9, United States Code), notwithstanding any choice of law provision in this Contract. The Commercial Rules of the American Arbitration Association (`AAA') also shall apply. The arbitrator(s) shall follow the law and shall give effect to statutes of limitation in determining any claim. Any controversy concerning whether an issue is arbitrable shall be determined by the arbitrator(s). The award of the arbitrator(s) shall be in writing and include a statement of reasons for the award. The award shall be final. Judgment upon the award may be entered in any court having jurisdiction, and no challenge to entry of judgment upon the award shall be entertained except as provided by Section 10 of the United States Arbitration Act or upon a finding of manifest injustice."
It is to be noted that each of the installment contracts incorporated by reference the Commercial Arbitration Rules of the American Arbitration Association (hereinafter "the AAA").[4] This Court has concluded that such statements of incorporation by reference are sufficient to include the incorporated material. See Ex parte Dan Tucker Auto Sales, Inc.,718 So.2d 33 (Ala. 1998) (contract between seller and buyer declared that disputes were to be resolved through binding arbitration according to the AAA's Commercial Arbitration Rules; therefore, the agreement incorporated the language of the Commercial Arbitration Rules regarding the resolution of disputes); Universal Underwriters Life Ins. Co. v. Dutton, 736 So.2d 564
(Ala. 1999) (retail installment contract and security agreement that incorporated buyer's order also incorporated that document's arbitration provision). Consequently, the reference to the AAA's Commercial Arbitration Rules (hereinafter referred to as "the Rules") in the arbitration provisions at issue is sufficient to make those rules applicable to the parties. The Rules contain specific procedures for filing a claim and choosing arbitrators, as well as provisions for the payment of administrative costs. In pertinent part, the Rules state:
 "R-4 Initiation under an Arbitration Provision in a Contract
 "(a) Arbitration under an arbitration provision in a contract shall be initiated in the following manner:
 "i. The initiating party (the `claimant') shall, within the time period, if any, specified in the contract(s), give to the other party (the `respondent') written notice of its intention to arbitrate (the `demand'), which demand shall contain a statement setting forth the nature of the dispute, the names and addresses of all other parties, the amount involved, if any, the remedy sought, and the hearing locale requested.
 "ii. The claimant shall file at any office of the AAA two copies of the demand *Page 616 
 and two copies of the arbitration provisions of the contract, together with the appropriate filing fee as provided in the schedule included with these rules.
 "iii. The AAA shall confirm notice of such filing to the parties.
 "(b) A respondent may file an answering statement in duplicate with the AAA within 15 days after confirmation of notice of filing of the demand is sent by the AAA. The respondent shall, at the time of any such filing, send a copy of the answering statement to the claimant. If a counterclaim is asserted, it shall contain a statement setting forth the nature of the counterclaim, the amount involved, if any, and the remedy sought. If a counterclaim is made, the party making the counterclaim shall forward to the AAA with the answering statement the appropriate fee provided in the schedule included with these rules.
 "(c) If no answering statement is filed within the stated time, respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.
 "(d) When filing any statement pursuant to this section, the parties are encouraged to provide descriptions of their claims in sufficient detail to make the circumstances of the dispute clear to the arbitrator.
". . . .
"R-13 Appointment from Panel
 "If the parties have not appointed an arbitrator and have not provided any other method of appointment, the arbitrator shall be appointed in the following manner:
 "(a) Immediately after the filing of the submission or the answering statement or the expiration of the time within which the answering statement is to be filed, the AAA shall send simultaneously to each party to the dispute an identical list of names of persons chosen from the panel. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.
 "(b) If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted lists, the AAA shall have the power to make the appointment from among other members of the panel without the submission of additional lists.
 "(c) Unless the parties have agreed otherwise no later than 15 days after the commencement of an arbitration, if the notice of arbitration names two or more claimants or two or more respondents, the AAA shall appoint all the arbitrators.
". . . .
"R-40 Extensions of Time
 "The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these rules, except the time for making the award. The AAA shall notify the parties of any extension.
". . . . *Page 617 
"R-51 Administrative Fees
 "As a not-for-profit organization, the AAA shall prescribe an initial filing fee and a case service fee to compensate it for the cost of providing administrative services. The fees in effect when the fee or charge is incurred shall be applicable.
 "The filing fee shall be advanced by the party or parties making a claim or counterclaim, subject to final apportionment by the arbitrator in the award.
 "The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees.
"R-52 Expenses
 "The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties."
This Court's review of an order granting a motion to compel arbitration is de novo. See W.D. Williams, Inc. v. Ivey, 777 So.2d 94 (Ala. 2000);Patrick Home Ctr., Inc. v. Karr, 730 So.2d 1171 (Ala. 1999). Therefore, this Court must determine "whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review." Exparte Roberson, 749 So.2d 441, 446 (Ala. 1999).
The defendants assert three issues that may be subsumed under the general argument that the trial court's order compelling arbitration materially and erroneously altered the terms of the arbitration agreements to which the parties had agreed. Specifically, the defendants assert: (1) that the trial court erred in ordering the parties to choose an arbitrator within a specified time,[5] failing which the trial court would choose the arbitrator (which it did in the King case); (2) that the trial court erred by ordering the defendants to pay all arbitration fees and expenses; and (3) that the trial court erred by ordering arbitration to take place within a specified time.
The plaintiffs respond that the orders compelling arbitration should be affirmed because, they argue, the orders are pursuant to the trial court's authority to enter such orders as are necessary to enforce and administer an order compelling arbitration and the trial court could have determined that certain portions of the Rules (such as the portions dealing with the fees and expenses of arbitration) were unconscionable under the circumstances of this case. The plaintiffs argue that the trial court could properly modify those portions of the Rules to prevent any unfairness to the parties.
The plaintiffs rely on Mangiafico v. Street, 767 So.2d 1103 (Ala. 2000), for the proposition that a trial court, in ordering arbitration, may properly impose and enforce requirements for the parties to follow in the arbitration process. In Mangiafico, the trial court ordered the plaintiffs to initiate arbitration within 30 days of the order, or it would dismiss the action with prejudice. Later, the trial court dismissed the action because the plaintiffs had failed to initiate arbitration proceedings within *Page 618 
the deadline set by the trial court's order. This Court held that the trial court did not abuse its discretion in dismissing the action because the trial court had the authority "`to manage its affairs in order to achieve the orderly and expeditious disposition of cases.'" Mangiafico, 767 So.2d at 1105 (quoting Iverson v. Xpert Tune, Inc., 553 So.2d 82, 87
(Ala. 1989)). Unlike the situation in Mangiafico, where the trial court issued an order to manage the litigation before it on a point not addressed in the arbitration provision, the trial court in this case did not simply require that the parties initiate arbitration by a specified time, but rather required that the arbitration process itself, once initiated, be completed within a specified time; that the arbitrator be named within a specified time, or else the court would select the arbitrator itself; and that the costs of the arbitration proceeding be paid by the defendants.
When a trial court compels arbitration, it must do so in a manner consistent with the terms of the arbitration provision. See Ex parteCappaert Manufactured Homes, 822 So.2d 385, 387 (Ala. 2001) ("[section] 5 [of the Federal Arbitration Act] mandates that the method set forth inthe arbitration agreement be followed"); Southern Energy Homes RetailCorp. v. McCool, 814 So.2d 845 (Ala. 2001) (trial court directed to vacate its order because it failed to compel arbitration in a manner consistent with the terms of the agreement between the parties); Ex parteDan Tucker Auto Sales, supra (trial court erred in assigning administrative fees of arbitration to the defendant when the Rules of the AAA provided for the relief of a party in the event of hardship). A trial court's order compelling arbitration that changes the terms of the arbitration provision will be reversed when
 "it appears that the trial court, although it ordered the parties to arbitrate, failed to compel arbitration in a manner consistent with the terms of [the] arbitration provision."
McCool, 814 So.2d at 849.
We conclude that when the trial court ordered the parties to arbitrate their claims, certain of the terms it imposed, instead of simply managing the litigation, as the plaintiffs assert, materially affected the arbitration process itself in ways contrary to the procedures expressly prescribed by the Rules. The trial court's orders compelling arbitration, in conflict with the Rules, (1) required each respective arbitration to be completed within a set time frame; (2) stated a deadline for selecting an arbitrator, in default of which the trial judge would select the arbitrator; and (3) ordered the defendants to pay the fees and expenses, as opposed to being paid by the respective parties. As to these aspects of an arbitration, the Rules prescribe specific mechanisms and procedures with which the trial court's special provisions are at variance. Thus, we conclude that the trial court erred when it mandated mechanisms and procedures inconsistent with the mechanisms and procedures set out in the Rules. See McCool, supra (a petition for a writ of mandamus was granted where the trial court erred in compelling arbitration in a manner inconsistent with the terms of the arbitration provision in the parties' contract); Dan Tucker Auto Sales, supra (petition for a writ of mandamus was granted where the trial court erred in directing the defendant to pay an arbitration filing fee, when the agreements between the parties provided otherwise). Accordingly, we hold that the trial court erred in modifying those procedures.
We now turn to the plaintiffs' argument that the trial court could have, *Page 619 
without so noting in its order, found portions of the Rules to be unconscionable, and in so finding, could have elected to fashion an appropriate remedy in its order. The plaintiffs rely on Harold Allen'sMobile Home Factory Outlet, Inc. v. Butler, 825 So.2d 779 (Ala. 2002), to support this argument. In Butler, the plaintiff signed an arbitration agreement that accorded the defendant seller the sole right to choose the arbitrator, the only limitation on that right being that "no arbitrator may be selected by the SELLER who shall have provided legal representative services to or for the SELLER at any time." 825 So.2d at 781. The trial court held that this clause, which gave the defendant alone the right to select the arbitrator, with no input from the buyer, was unconscionable. Based on § 5 of the Federal Arbitration Act (hereinafter referred to as "the FAA"), the trial court appointed an arbitrator for the parties. In this Court's review of the trial court's actions, we concluded that the trial court acted properly when it looked to § 5 of the FAA for guidance in fashioning a remedy. That section of the FAA provides:
 "If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator."
9 U.S.C. § 5.
The trial court selected an arbitrator on the basis that the selection method provided by the agreement was invalid and that § 5 provided that it was the court's duty to select an arbitrator in the absence of valid direction in the arbitration agreement. Because the portion of the arbitration agreement providing for the selection of arbitrators was found to be unconscionable and therefore invalid, the arbitration agreement no longer provided for the selection of arbitrators. Under those circumstances, this Court determined that the trial court had acted properly under the FAA by selecting an arbitrator for the parties.
In these cases, the plaintiffs' analogy to Butler does not fit, because there is no evidence in the record that the trial judge concluded that any portion of any of the arbitration agreements was unconscionable. Although the plaintiffs argue that "[i]t is clear that the trial court found the selection process to be unconscionable," nothing in the trial court's orders suggests the court considered that issue, much less what role that issue might have played. In the instant cases, the trial court, unlike the court in Butler, made no reference whatsoever to unconscionability in any of its orders, and the record otherwise contains no support for an inference that the trial court determined that any portions of the Rules were indeed unconscionable.
We recognize that a properly preserved issue and argument might well establish unconscionability with respect to the imposition of excessive filing fees and arbitration costs on a claimant, when considered in the full context of the particular claimant's situation, including the claimant's financial resources. In these cases, however, *Page 620 
the respective plaintiffs have failed to adequately and properly present such an issue in their briefs, particularly with respect to the hardship that any payment of filing fees or costs as required by the Rules might impose on that particular plaintiff. As the United States Supreme Court stated in Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79,91-92 (2000):
 "We have held that the party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue. See Gilmer [v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991)]; [Shearson/American Express, Inc. v.] McMahon, [482 U.S. 220 (1987)]. Similarly, we believe that where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs. Randolph did not meet that burden. How detailed the showing of prohibitive expense must be before the party seeking arbitration must come forward with contrary evidence is a matter we need not discuss; for in this case neither during discovery nor when the case was presented on the merits was there any timely showing at all on the point."
Furthermore, Rule 28, Ala.R.App.P., requires that appellants and appellees include specific types of information in their briefs. Rule 28 states, in pertinent part:
 "(a) Brief of the Appellant. The brief of the appellant shall contain under appropriate headings and in the order here indicated:
". . . .
 "(5) An argument (The argument may be preceded by a summary. The argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on). . .
". . . .
 "(b) Brief of the Appellee. The brief of the appellee shall conform to the requirements of subdivision (a)(1)-(5), except that a statement of the case, the issues, or facts need not be made unless the appellee is dissatisfied with the statements of the appellant.
". . . .
 "(e) References in Briefs to the Record. References in the briefs to the record on appeal shall be to the appropriate page numbers of the record on appeal. If reference is made to a page of the clerk's record, the reference shall be preceded by the letter `C.' If a reference is made to a page in the reporter's transcript, then the reference shall be preceded by the letter `R.' If reference is made to evidence, it shall be made to the pages of the clerk's record or reporter's transcript at which the evidence was identified, offered, and received or rejected."
Compliance with Rule 28 is not optional. In McLemore v. Fleming,604 So.2d 353, 353 (Ala. 1992), this Court observed:
 "In Gibson v. Nix, 460 So.2d 1346, 1347 (Ala.Civ.App. 1984), the court stated: `Where an appellant fails to cite any authority, we may affirm, for it is neither our duty nor [our] function to perform all of the legal research for an appellant.' See Henderson v. Alabama A M University, 483 So.2d 392 (Ala. 1986) (quoting Gibson with approval). *Page 621 
 "Furthermore, we cannot, based on undelineated propositions, create legal arguments for the appellant. Spradlin v. City of Birmingham, 601 So.2d 76 (Ala. 1992)."
See also Connerly v. Connerly, 523 So.2d 461 (Ala.Civ.App. 1988) (an appellant's citations to general propositions of law not specifically applicable to the issues presented by the appeal do not meet the requirements of Rule 28, Ala.R.App.P.).
The entire argument presented by each plaintiff with regard to the unconscionability of arbitration conducted pursuant to the Rules consists of the following pertinent facts. We have omitted the references to pages in the record where the argument appears, and we have summarized in footnotes what appears on the refernces pages. In the Lee case, the appellee's brief states, in pertinent part: (1) "She set out in her complaint that the arbitration contemplated would be unconscionable, and that the contract at issue was an `adhesion contract,' or a contract to which she had no input," and also "the trial court obviously considered her complaint specifically concerning the unconscionability of the provisions of the AAA";[6] and (2) "In this case, the plaintiff would be required to pay the AAA an additional $4,000.00 just as administrative fees to begin the process."[7]
In the Dudley case, the appellee's brief states, in pertinent part: (1) "The trial court obviously considered her allegations concerning adhesion *Page 622 
contracts and her count for declaratory judgment as to unconscionability"; (2) "The trial court obviously considered her complaint specifically concerning the unconscionability of the provisions of the AAA";[8] and (3) "In this case, the plaintiff would be required to pay the AAA an additional $750.00 just as administrative fees to begin the process."[9]
In the Witherspoon case, the appellee's brief states, in pertinent part: (1) "She set out in her complaint that the arbitration contemplated would be unconscionable, and that the contract at issue was an `adhesion contract,' or a contract to which she had no input";[10] (2) "The trial court obviously considered her complaint specifically concerning the unconscionability of the provisions of the AAA";[11] and (3) "In this case, the plaintiff would be required to pay the AAA an additional $4,000.00 just as administrative fees to begin the process."[12]
In the King case, the appellee's brief states, in pertinent part: (1) "She set out in her complaint that the arbitration contemplated would be unconscionable, and that the contract at issue was an `adhesion contract,' or a contract to which she had no input"; (2) "The trial court obviously considered her allegations concerning adhesion contract and her count for declaratory judgment as to unconscionability"; and (3) "In this case, the plaintiff would be required to pay the AAA an additional $750.00 just as administrative fees to begin the process."[13]
Unconscionability relating to the payment of filing fees and other costs of arbitration is not an issue in the Parnell case, because the trial judge's orders in that case never addressed the payment of these fees and costs. Accordingly, Parnell had no occasion to discuss in his brief unconscionability as a possible justification for the shifting of the payment of any fee or cost. We note that in the Lee, Witherspoon, Dudley, and King cases, the respective plaintiffs fail to discuss or reference in their briefs any part of the record that might have a bearing on the financial situation of any plaintiff and also fail to show that the required fees and costs of arbitration might place a genuine hardship on that plaintiff. Under these circumstances, this Court will not assume that the trial court considered unconscionability and that the trial court consequently based its orders upon that consideration.
Accordingly, we affirm the orders insofar as they compelled arbitration, but we reverse the portions of those orders specifically requiring the allocation of fees and costs among the defendants and specifically describing the means for the selection of arbitrators.[14]
We remand the causes for the trial court to enter orders compelling arbitration consistent with the provisions in the respective installment contracts.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Moore, C.J., and See, Brown, and Stuart, JJ., concur.
[1] This Court has consolidated these cases for appeal because they arise from substantially similar facts and pose the same legal issues. See Rule 3(b), Ala.R.App.P. ("Appeals may be consolidated by order of the appellate court upon its own motion. . . .").
[2] While many of the plaintiffs refer to GreenPoint as GreenPoint Credit Corp., we note that it is now known as GreenPoint Credit, LLC.
[3] The arbitration provision in the Lee appeal differs only to the extent that the opening sentence refers to any controversy or claim between or among "you and I. . . ."
[4] Although the parties have not argued the issue, we note that the expedited procedures of the AAA's Commercial Arbitration Rules may apply to some of the appellees. However, the application of these expedited procedures would not alter our analysis of the issues raised by the parties.
[5] This time was within 30 days in the Dudley case and the Parnell case and within 14 days in the remaining cases.
[6] The Lee record addresses only adhesion contracts and fraud on these pages.
[7] Here the Lee record includes a table showing various filing fees and the case-service fee. The costs are apparently scaled according to the size of the claim involved.
[8] The cited pages of the Dudley record refer only to fraud allegations by the plaintiff.
[9] Here, the Dudley record includes a table showing various filing fees and the case-service fee. The costs are apparently scaled according to the size of the claim involved.
[10] The part of the record cited in the Witherspoon case reveals only allegations of fraud and civil conspiracy.
[11] Again, there is no mention of unconscionability in the record at the pages cited by the plaintiff.
[12] This cite refers only to a claim of fraud against the manufacturer of the home purchased by Witherspoon. It does not mention any kind of fees or other costs of arbitration.
[13] The plaintiffs do not cite to the record for this proposition.
[14] We do not reach the issue of the directions by the trial court that arbitration be completed within a specified period because our consideration of that issue is premature. The trial court's orders do not state any particular consequence that would attend the failure of the parties to meet the respective deadlines imposed in that regard, and the record does not establish that those deadlines will necessarily conflict with the Rules.